Johnson, J.
The mortgage which the defendant holds stands duly recorded and unsatisfied upon the record; and *524 the plaintiffs, in order to escape from its lien upon the lands which they have purchased, are bound to show its extinguishment. Leitch being one of the executors of Kellogg, to whose estate the mortgage now in question belonged, and the executors then holding the mortgage, became the purchaser of the equity of redemption in the mortgaged premises under a foreclosure sale upon a subsequent mortgage, which was the next lien to that of the mortgage now in question; upon this state of facts it is now insisted that the two estates were not exempt from the operation of the law of merger. It has been so adjudged by the referee and by the supreme court, and I shall for the purposes of this case assume that there is no ground to question the correctness of the . determination. The views of the referee and of the supreme court upon this point are briefly these : The executor has the legal authority absolutely to dispose of the title to a lease or a mortgage which comes to him from his testator; and when he acquires by purchase the reversion of the equity of redemption in his own right, a merger may take place, notwithstanding he holds the lease or mortgage ere autre, droit. If the union of the two estates in the same hand be brought about by act of. the law, they are exempt from merger in case one estate is held ere autre droit; but if it be brought about by the act of the party, the exemption does not exist.
Professional and perhaps judicial opinion was probably inclined to the position that merger could not take place under the latter circumstances, until the full discussion of the question in Preston on the Law of Merger; but since that discussion, although I am not aware of any later judicial determination upon the subject, the distinctions which he points out have been adopted in Williams on Executors, in Sugden on Vendors and in Kent's Commentaries. It is hardly worth while to restate the authorities and arguments which are so accessible in the books cited. (Preston on Merger, ch. 12, p. 273, &c.; 1 William on Ex'rs., 440, 441; Sugden on *525 Vendors, ch. 15, § 2, pl. 5, 3rd vol., p. 20, 21; 4 Kent's Com., 99 - 104.) Nor is it needful to express any opinion whether we should adopt those views, or apply them to the case of a mortgage held by one as executor who purchases the equity of redemption in his own right.
Taking the positions before stated to be law, the next inquiry must be whether a merger did take place. Leitch had in equity a right to elect whether the charge should remain separate from the equity of redemption, or whether the charge should sink into the general legal ownership of the land and become extinguished. This was expressly adjudged in the court for the correction of errors, in James v. Morey (2 Cow., 246), to be the law even where the charge and equity of redemption were in the same hand in the same right; much more should the right of election be maintained where they are held in different rights; for by that means, the party having the election may avoid committing an injury to the estate or right which he holds in a representative capacity. The deed to Eusebius Lawrence, which in terms subjects the lands conveyed to him to the payment of the mortgage in question, and the subsequent assignment of the bond and mortgage to the Bank of Syracuse, are irresistible evidence that when those instruments were executed Leitch intended that the charge upon the lands should continue to exist. The referee has found certain other facts, prior in point of time to those above mentioned, upon which he has decided that they, in construction of law, put an end to Leitch’s right of election, and evinced his purpose to hold the land free from the mortgage. The most important of these facts is the conveyance by Leitch to Taylor of a large part of the lands by deed with warranty. This sale was brought about by Howlit and Freeman, who bargained with the purchaser in respect to it. They were induced to do so by declarations of Leitch to them, that if the land could be sold at a certain price it would pay the principal part of Freeman’s creditors, and by his *526 promise to pay Howlit’s claim against Freeman in case they would aid in selling the land. These facts are certainly evidence that Leitch intended to free the land' conveyed to Taylor from the lien of the mortgage; but they do not involve the legal consequence that the charge should be extinguished in respect to the whole land. They have, in this respect, the same effect as a release by the owner of a mortgage of part of the land covered by it. In the words of Woodworth, J., in James v. Morey (p. 287), “ until he made a disposition of the property, and until some person acquired an interest, he was at perfect liberty to consider the mortgage merged or not as might be most beneficial.” The same principle extends to separate parcels of the land. What he conveyed not specially charged with the burthen, while the mortgage was in his hands, went free into the hands of the grantees. The lands now in question were expressly charged with the lien of this mortgage, and its amount was deducted from the purchase money. In respect to them, therefore, there is the clearest evidence of intention to preserve the lien of the mortgage. The plaintiffs had notice from the record of the existence of this mortgage, and also that the equity of redemption had come to Leitch, and that so the mortgage might be merged. They must be taken to have purchased with reference to this state of facts, and were bound at their own peril to ascertain whether in point of fact it was merged.
I am therefore of opinion that the decision below was erroneous, and that the judgment should be reversed and a new trial ordered.
Marvin, J.
Is it quite clear that the doctrine of the merger of estates has any application to this case ? Merger is described to be, whenever a greater and a less estate meet in the same person, so that the less becomes merged er drowmed in the greater. In order to produce a merge*there must be two distinct estates meeting in the same *527 person. (Crabbe's Law of Real Property, § 2447; 2 Black. Com., 177; James v. Morey, 2 Cowen, 246; Preston on the Quantity and Quality of Estates, Merger, a.) The author last cited, at page fifty-five, says: “To call the doctrine of merger into effect, there must of necessity and at least be two estates. On this head the law is positive; indeed it is demonstrably clear, that unless there be two estates in the same person in the same land, there is not any estate in that person to merge or occasion a merger. A mere right or title will not suffice.” What is an estate ? Blackstone says (Book 2, 103): “An estate in lands, tenements and hereditaments signifies such interest as the tenant hath therein.” (See also Bouvier’s Law Dic., title, Estate.) A tenant is one who holds or possesses lands or tenements by any kind of title, either in fee, for life, for years or at will. (Bouvier’s Law Dic., “ Tenant;” Black., ch. 5, vol. 2, English Tenures; Hilliard on Real Property, vol. 1, ch. 2, § 1.) Preston has reference to estates in land.
What estate had Leitch as the executor of Kellogg, the mortgagee, in the mortgaged premises ? The referee and the supreme court held that when he became the purchaser at the sale of the mortgaged premises upon a junior mortgage, two estates were united in him; and that the prior mortgage to his testator was extinguished by a merger of the estate of the mortgagee. No case in point has been cited to sustain this position. It is attempted to be sustained by a reference to cases which it is claimed are, in principle, analogous. I shall presently advert to the authorities and rules cited. In the meantime, I think the question here propounded worthy of some consideration. Has the executor of a mortgagee any estate in the mortgaged premises 1 By the English law, upon the execution of the deed by which the mortgage is created, the legal estate is vested in the mortgagee, subject to the condition or proviso for redemption. (Crabbe’s Law of Real Property, §§ 2211, 2225; 1 Powell on Mort., 226.) If the mortgage is in fee, the *528 legal estate upon the death of the mortgagee will descend to his heir. (Crabbe’s Law of Real Property, § 11.) In equity, however, the mortgagor is regarded as the owner, and the mortgage as a security to the mortgagee for his money. The consequences flowing from the distinction made in law and in equity are very important. It was early held that notwithstanding the land 'mortgaged might .descend to the heir-at-law of the mortgagee, the executor or administrator was entitled to the money secured by the mortgage, and that the heir or devisee should be a trustee fur the personal representative. (Powell on Mort., 682, et seq.; Crabbe’s Law of Real Property, § 11.) Kent (4 Com., 159,) says, the doctrine in equity is that the mortgage is a mere security for the debt, and only a chattel interest, and that until foreclosure the mortgagor continues the real owner of the fee; that the equity of redemption is considered to be the real and beneficial estate, tantamount to the fee at law; and it is accordingly held to be descendible by inheritance, devisable by will and alienable by deed, precisely as if it were an absolute estate of inheritance at law. He adds that courts of law have adopted these equitable views, anc that except as against the mortgagee, the mortgagor, while in possession and before foreclosure, is regarded as the real owner; and that the mortgagee, notwithstanding the form of the conveyance, has only a chattel interest, and his mortgage is a mere security for a debt.. The reason assigned by courts of equity in England why the executor of the mortgagee should have the money instead of the heir, is because it came out of the personal estate and ought, therefore, to return thither; it being equitable that the satisfaction should accrue to that fund which sustained the loss. (Powell on Mort., 685; Will., Ex’rs, 431, 439.)
Are we able to discover any estate in land in the executor of the mortgagee ? Debts secured by mortgages, bonds, notes or bills, accounts, &e., are, by the statute, declared to be assets and are directed to go to the executor or admin *529 istrator, to be applied and distributed as a part of the personal estate of the testator or intestate. (2 R. S., 82, 83, § 6.) Until we can see that the executor of the mortgagee has an estate in the mortgaged premises, we cannot apply the doctrine of the merger of one estate in another. In the cases referred to by the supreme court, the executor was seized of an estate in lands.
The general rule in relation to merger, in addition to what has been above stated, is that the estates must not only come to the same person, but in one and the same right; i. e., if one estate is held in his own right and the other estate was held in right of another, there can be no merger. (2 Black. Com., 177.) Preston does not include this requisition in Ms definition. He says the several estates must be held in the same legal right; or where the estates are held in different legal rights, one of -them must not be an accession to the other merely by act of law (p. 51). He states the general rule at page 273, and proceeds to show that there are cases where there will be a merger though the two estates have not come to a person in one and the same right. The first case put is that if an executor, who has a lease from his testator, purchases the freehold, the' lease is extinct. Another case is that if an executor hath a term and purchaseth the fee simple the term is determined. He also cites some cases to show that where a woman has a term' for years, and marries, and her husband purchases the fee or reversion, the term is extinct; the reason assigned being that he has done an act, which destroys the term, namely the purchase. Mr. Preston remarks that in these cases the husband was possessed of the term in one right, and became seized of the reversion in another right, and yet the doctrine of merger prevailed. After examining several cases he arrives, at the conclusion that-where one of the estates was an accession to the other by the mere act of the law, there was no merger; but if one estate was held in right of another, and the tenant ac *530 quired the other estate voluntarily by purchase, the estates would merge. Upon this distinction the supreme court founded their decision in the present case, Leitch having purchased the premises at the sale upon the junior mortgage. Mr. Preston says that in each of the cases (he had referred to) the party who held the estate in autre droit had the complete ownership of that estate, at least the complete right of alienating the same; and as he might have disposed of the estate and' has voluntarily. acquired the reversion or remainder, the law admits of its general conclusion and the application of those rules of which merger is the general consequence (p. 297).
It is seen in all these cases that the executor or the husband was the owner of the estate in the. land. A lease for years creates an estate in land in the lessee. It is not a freehold estate but it is a chattel. It does not descend to the heir, but the term goes to the executor or administrator and is assets in his hands. He has the same title to it that he ha§ to any of the chattels of the testator or intestate. So the husband, by the marriage, becomes the tenant or owner of the term, which is an estate in land, and may dispose of it. By purchasing the reversion he does an act by which he declares that he means to be the owner .of the freehold, and this act amounts 'to a disposition of the term and destroys it. (Preston, 278, 286, 305.) When the husband seized of a term in right of his wife, purchases the reversion, he will be accountable to no one for the value of the term, as he had a right to use or dispose of it for his own benefit. Hot so in the case of an executor; although he holds 'the legal title to the term, he holds it in trust as executor, and should the law cast the reversion upon him, there would be no merger but being a purchaser of the fee or reversion he has done an act. showing an intention to appropriate the term to his own use, and this, as Preston says (p. 561), the law considers a devastavit, making the executor or administrator liable to an action on which exe.r *531 cution may be sued out against Ms own proper goods and chattels.
As already stated, all the cases of executors and administrators referred to by Preston, relate to estates for years, and he is careful to say at page 309, that the cases cited show the application of the doctrine only as between terms for years on the one hand, and the freehold or the fee on the other; and as we have seen a term for years is a legal estate, the legal title to which vests in the executor, and he has the same control over it that he has of any of the chattels of the testator. By purchasing the reversion or fee he does an act by which he declares that he appropriates this chattel to Ms own use and thus makes himself liable for a devastavit. Are these cases and the principles upon which they rest applicable to the present case—a case where the executor purchases for himself the premises at a sale upon a junior mortgage ? Has Leitch made himself liable as for a devastavit l Devastavit is a mismanagement of the estate of the deceased, in sqandering and misapplying the assets contrary to the duty imposed upon the executor or administrator. (Williams on Ex’rs, 1104.) If the executor spends, consumes or converts to his own use the effects of the deceased, he is guilty of devastavit. So if the executor collusively sells the testator’s goods at an under value, when he might have obtained a higher price for them, it is a devastavit and he shall answer the real value. (Williams on Ex’rs, 1105.) And see the entire section on devastavit. Williams says, the general rule adopted with respect to executors, &c., is founded upon two principles, 1st. That in order not to deter persons from undertaking these offices, the court is extremely liberal in making every possible allowance, and cautions not to hold executors, &c., liable upon slight grounds; 2. That care must be taken to guard against an abuse of trust. It is well to keep these rules in mind. The cases referred to by Preston rest upon the doctrine of a devastavit; and no case touching a mortgage in the hands of the executors is referred to. We do not *532 find that the executor of the mortgagee has an estate in lands. What is then his interest? The statute calls it a debt secured by mortgage, and makes it assets in his hands. It is a charge upon the land, and so styled in the books. (Williams on Ex'rs, 433; 2 Pow. on Devises, 145; Forbes v. Moffatt, 18 Ves., 384.) And Preston, at page 567, says: “ If a charge upon land comes to the same person that is entitled to the land, there shall be no extinguishment on this account unless he has the same or the like interest in both.” This authority is not perhaps precisely in point in the present case. But the general rule in relation to charges is, that when the estate, however acquired, comes to the person owning the charge upon it in his own right, there will not necessarily be an extinguishment of the charge. The question will then, in equity, depend upon the intention of the party, and, in the absence of evidence of intention, upon the presumed interests of the owner of the estate and charge. (18 Ves., 384.) We shall have occasion to recur to this principle in another view of the case. Thus far I have been attempting to show that the principles and authorities, upon which the supreme court placed their decision, are not applicable.
It has, however, been repeatedly decided that when the mortgagee himself purchases the equity of redemption of the mortgagor, his mortgage interest is extinguished, and this is called merger. It will be "proper to examine these cases and ascertain the principles upon which they rest, and whether they are applicable to the present case. It may be remarked that the term merger is applicable to rights other than such as exist in land. A simple debt is said to be merged in a higher security. There may be such a confusion of rights as to cause an extinguishment or merger, aa where the debtor and creditor become the same person. (Bouv. L. D., Merger Rights.) In Gardner v. Astor (3 J. Ch. R., 53) one Winter had acquired the title of the mortgagor *533 He then paid the bond and mortgage and took an assignment. lie conveyed the premises January 11, 1811, in fee, with full covenants. He transferred the bond and mortgage by an assignment bearing date March, 1810, to the complainant’s intestate. The assignment was acknowledged January 28, 1811. Upon a bill filed to foreclose the mortgage, the defendant by answer alleged that he was a purchaser in good faith and without notice, &c. The chan-, cellor held that the mortgage was paid and extinguished. He refers to Forbes v. Moffatt (18 Ves., 384), and remarks “ that there was no reason appearing from the case why the two estates should have been kept distinct in the hands of Winter; that unless some beneficial interest for keeping up the distinction clearly appeared, the ordinary and natural conclusion ought rather to be adopted, that when the owner of the equity of redemption pays off a subsisting mortgage he does it to exonerate his estate.” He adds: “ We ought, as a general rule, to follow the principle that in the union of the equitable and legal estates in the same person, the former is merged and extinguished.” In this case, Winter held the land and the mortgage in the same right and paid off the mortgage. If Leitch had actually paid the $2500 to the estate,.a different question would be presented. Leitch never paid the mortgage; and if it was extinguished, as we have seen, it was upon the principle that he was guilty of a devastavit. In Star v. Ellis (6 J. Ch. R.) the chancellor reiterated the same principles, citing Lord Compton v. Oxenden (2 Ves., 261), and Forbes v. Moffatt. In Millspaugh v. McBride (7 Paige R., 509) the purchaser of the equity of redemption took an assignment of a senior mortgage; it was held that there was no merger or extinguishment of the sénior mortgage, so as to let in the junior mortgage and give it a preference of payment. When premises are sold upon a junior mortgage or upon a judgment, the legal presumption is that the purchaser only bids to the value of the equity of redemption. He takes the land subject to the *534 prior mortgage, and the land in equity becomes the primary fund to pay the prior mortgage. (McKinstry v. Curtis, 10 Paige, 503; Russell v. Allen, ib., 249; Heyer v. Pruyn, 7 Paige, 465; Tice v. Annin, 2 J. Ch. R., 125.) In case the senior mortgage in the present case was not extinguished by Leitch’s purchase of the premises at the sale under the junior mortgage, the land in his hands became the primary fund out of which to pay the first mortgage ; and Freeman, the mortgagor, could have compelled the executors or any person who should become the owner of the mortgage to resort, in the first instance, to the land for its satisfaction. As the law presumes that the purchaser at a sale upon a junior mortgage or judgment, bids no more than the value of the equity of redemption, the principle upon which the extinguishment or merger of the prior mortgage is adjudged, in those cases where the purchaser of the equity of redemption and the owner of the prior mortgage is the same person, is obvious. The purchaser has placed himself in a position where he has made the land the primary fund for the payment of the first mortgage ; and he has declared that sufficient for the payment of his debt. There is no necessity, so far as the title is concerned, for any further foreclosure ; and as he holds the legal and equitable titles, if there be no good grounds for keeping them separate, the equitable interest will be extinguished. But I know of no case where it is held, that in case the owner of the senior mortgage purchases the premises at a sale upon the junior mortgage, the senior mortgage is invariably and without regard to circumstances extinguished. Suppose that, in point of fact, the premises were not of the value secured upon them by the first mortgage, will the mortgagor be entirely discharged from his bond ? Will not the court permit the mortgagee to proceed upon his mortgage by foreclosure and sale, and, in case of a deficiency, to collect it of the mortgagor! Or is the mortgagee absolutely con- *535 eluded by his having purchased the equity of redemption at the sale upon the junior mortgage ?
As has already been conceded, the term merger has been applied by our judges to cases where a mortgagee purchases the equity of redemption; but in my opinion there is a wide distinction in principle between such cases and those cited from Preston, and upon which the supreme court founded its decision. In the latter cases the executor or husband, who was seized of a legal estate and in the enjoyment of it, had a right to dispose of it; and by purchasing the fee or reversion he was adjudged to have disposed of it to himself, or to have converted it, and hence, in the case of the executor, he was held liable as for a devastavit. Now I do not think that an executor or administrator, who attends a sale upon a mortgage or judgment junior to the mortgage held by him as executor or administrator, and purchases the premises, makes himself liable as for a devastavit. In the present case, as Leitch purchased the premises upon a junior mortgage held by him and his coexecutors, as such, for a sum less than the value of the premises upon which such junior mortgage was a charge, and thus suffered the premises, that is, the equity of redemption upon which the junior mortgage was charged, to be sold at an under value, he might, under one of the rules above cited, be chargeable as for a devastavit and made to account for the full value of such equity of redemption ; and it appears in this case that he did account to the estate and pay the amount of the mortgage upon which the sale actually took place. But this principle will not affect the question touching the senior $2500 mortgage. There is no inconsistency, no such commingling of interests or confusion of rights as to require the application of the doctrine of extinguishment.
In all the cases holding an extinguishment or merger, where a mortgagee has purchased the equity of redemption, the question in equity has been made to turn upon the intention of the party. Moffatt v. Hammond, (18 Vesey, *536 385) Gardner v. Astor, (3 Johns. Ch. R., 53) James v. Morey, (2 Cowen, 246) and Starr v. Ellis, (6 Johns. Ch. R., 393) proceed upon this principle. And if it be conceded that Leitch, as executor, had such an interest or estate as might be extinguished by his purchase of the equity of redemption at the sale upon the junior mortgage, the question of intention will remain to be considered.
A court of equity, says Chancellor Kent, “ will keep an incumbrance alive or consider it extinguished, as will best serve the purposes of justice and the actual and just intention of the party. It must be an innocent purpose, and injurious to no one.” (6 Johns. Ch. R., 395.) He states the general rule from Forbes v. Moffatt, (supra,) to be that the union of the estates will create a merger, unless there be some beneficial purpose or some declared intent to prevent it. That the question is upon the intention, actual or presumed, of the person in whom the interest is united. That if it be perfectly indifferent to the party whether the charge should or should not subsist, it sinks. At law, the intention is but little regarded; it is not the governing principle of the rule, as in equity. (Note a to Forbes v. Moffatt, supra, Sumner’s ed., and cases cited; 4 Kent Com., 102.) It is generally said, in the cases, that the rule at law is inflexible, while in equity it is controlled by the expressed or implied intention of the party in whom the interest or estates unite. See opinion by Sutherland in James v. Morey, (supra,) and see in same case the opinion of Woodworth and Sutherland, for the cases and principles upon which the doctrine of merger rests at law and in equity. That case turned upon the question of intent. It may be remarked that merger is not favored in equity, and is not allowed unless for special reasons and to promote the intention of the party. (4 Kent Com., 102.)
With this brief reference to the governing rules in equity, let us look into the report of the referee. This action was commenced and tried under the Code of Procedure, and by *537 § 272, the referee is required to state the facts found, and his conclusions of law separately. The referee has stated many facts and his report also contains the evidence of several witnesses; but I do not find in his report that he has stated as a fact that Leitch intended or did not intend a merger. He states facts, and his opinion contains arguments and conclusions of law, and he decides that there was a merger. In his opinion, he brings in review the evidence touching the election of Leitch, either to keep the elder mortgage alive or that it should sink into the inheritance he had purchased. He refers to certain acts of Leitch, and says if they stood alone they would not only warrant but compel us to the conclusion that he thereby declared his intention to hold the mortgage as a subsisting one. He says that these acts were preceded by certain declarations and acts of Leitch, which he refers to, and adds: “ Those acts determined, in construction of law, his election to hold the estate discharged of the mortgage.” He adds: “If these prior acts of Leitch determined his election, as I think they did, they settle the character and consequences of his purchase at the master’s sale. If so, then subsequent acts, ever so explicitly declaratory of his intention to hold the mortgage alive, would be unavailing.” It is remarked by the referee, in his opinion, that the conduct of Leitch, apparently contradictory in his dealings with the mortgage in question, is proof, to his mind, that he did not understand the doctrine of merger. The referee continues, in his opinion, to discuss the evidence and law, citing numerous cases, and concludes that there was a merger.
There is a proper separation in the report between the finding of facts (though the evidence of witnesses is improperly inserted in the statement of facts found), and the opinion and conclusions of law. After stating his finding of facts, he says: “My conclusions upon the facts above found are as follows:” Then follow his opinion and decisions, containing the remarks above referred to. The difficulty is *538 that the referee has not found, from the evidence, whether Leitch elected that the mortgage interest held by him and his coexecutors should be extinguished, or whether ho so intended. Election or intention is a fact; and, if material, should have been expressly found. He says, in his opinion, that he thinks that certain prior acts determined his election. If so, then subsequent acts, evincing an intention to keep the mortgage alive, would be unavailing, &c. This is the nearest approximation I find in the report of any finding of an election by Leitch; and it will not be claimed that this is a finding of such facts as contemplated by the Code.
The counsel for both parties, I think, understood the report as I do; for they argued the questions of election and intention as any open questions, upon the facts as found and the evidence as set out in the report, and not as a fact found by the referee; and I think the supreme court must so have understood the report, though the difficulty which is now embarrassing me is not adverted to by that court, or the counsel arguing before us. The supreme court can review the decision of the referee upon the evidence; this court does not review cases upon the evidence, but upon the law only; that is, the referee must state the facts he finds from the evidence, which in this court is like a special verdict, and then the referee is to state his “ conclusions of law;” and these conclusions, assuming the facts found to be true, are the subject of review in this court.
If I am right in the position that, in equity, merger depends upon the circumstances and is governed by the intention, express.or implied (provided such intention be just and fair), of the person in whom the interest or estates unite, it appears to me to follow that the report of the referee does not contain a sufficient statement of facts found to enable us to pronounce a definitive judgment. The referee should have found expressly whether Leitch elected that there should be an extinguishment of file prior mortgage or whether he so intended; or he should have found *539 facts from which he could draw the conclusion of law, that keeping the prior mortgage on foot was inequitable and not for an innocent purpose; that the intention was not fair and just; that it would be injurious to some one. (See Starr v. Ellis, 6 Johns. Ch. R., 395; 4 Kent, 102.) Or in the absence of any express intention, he should have found facts from which the law would pronounce a merger or no merger. It may be that the referee and the supreme court regarded this case as belonging to that class of cases where the intention of the party has not in any way been evinced. But such I think is not the character of the case. Abundant facts are found to show that Leitch had an intention upon the subject. The case is prolific of facts; some tending most certainly to show that he designed to keep the mortgage alive, and others, though I think less decisive, tending to show that he claimed an absolute estate in the premises discharged from the prior mortgage.
In the absence of any evidence of intention, courts of equity consider whether a merger would be prejudicial to the party; if so, it will be presumed that he intended to keep the estates or interests separate. If no interest or object in keeping the estates separate can be discovered, an intention to merge will be presumed in those cases where the party is capable of electing or forming an intention, and there will be an extinguishment. (18 Ves., 392, 393 and cases cited; 4 Kent, 102.)
If this case should be regarded as furnishing no evidence of intention on the part of Leitch, I think we should hardly be justified in holding that it was a matter “ perfectly indifferent” to him “ whether the charge should or should not subsist.” (18 Ves., 394.) If it be held, that by purchasing the equity of redemption at the sale upon the junior mortgage the prior interest or equitable title was extinguished, it must be so held upon the ground that he had done an act rendering him guilty of a devastavit, and he became liable personally at once to the estate or creditors for the amount *540 of the prior $2500 mortgage. It seems to me that we can hardly hold this. He may have been very willing to purchase the equity of redemption, and at the same time very unwilling to become personally liable for the amount of the prior mortgage; and such liability may have been very prejudicial to him. Indeed, it seems to me that in the absence of any finding upon the question of election or intention, the question comes to this; can an executor purchase. the premises on his own account at a sale upon a junior mortgage, when at the same time he holds in the character of executor a prior mortgage upon the same premises, unless an extinguishment immediately follows ? The supreme court held that, in the absence of evidence by Leitch to show that he intended to keep the prior mortgage on foot, he would be presumed to have intended what the court held was the legal consequence of his acts, viz. an extinguishment of the prior mortgage. I am not prepared to assent to this proposition in the case of an executor, and have endeavored to show that the authorities cited are not applicable. But it is not a case destitute of evidence upon the question of election or intention, and the referee should have found the fact one way or the other from the evidence. In James v. Morey (2 Cow. R., 246) the evidence upon the question of the election or intention of Wattles, the mortgagee and purchaser at the sheriff’s sale upon a j udgment in his own favor, was carefully considered and the facts ascertained; and it being found that Wattles intended to keep his mortgage on foot, it was held that there was no extinguishment of it. The facts should in like manner have been ascertained in this case, assuming that there is no difference in principle between an executor holding a mortgage as executor, and the mortgagee. That was a case in chancery brought before the court 'of errors by appeal; and the evidence was properly before the court, from which to ascertain the facts. Under our present system, the facts must be settled before the cause reaches this court. We cannot *541 examine the evidence and.attempt to ascertain the facts upon the question of intention.
The judgment should be reversed and a new trial ordered.
Judgment accordingly.